# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50139 | **DATE** | 6/8/2001 |
| **CASE TITLE** | | Miller vs. Rockford Register Star | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendant's motion for new trial is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| X | Notices mailed by judge's staff. | | | JUN - 8 2001 | | 49 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 6-8-01 | | |
| /SEC | courtroom deputy's initials | | 2001 JUN -8 AM 10:25 | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

CLERK
U.S. DISTRICT COURT
FILED-WD



DOCKETED

JUN - 8 2001

LISA D. MILLER,        )
                      )
      Plaintiff,    )   No. 98 C 50139
                      )
   v.               )
                      )
THE ROCKFORD REGISTER STAR,  )
                      )
      Defendant.    )

## MEMORANDUM OPINION AND ORDER

Following a three-day trial, on May 2, 2001, the jury in this case returned a verdict in plaintiff Lisa D. Miller's favor and against defendant Rockford Register Star ("the Register Star") in the amount of $223,045.82. Of this amount, $100,000 was for compensatory damages, $100,000 was for punitive damages, and $23,045.82 was for backpay. On May 11, 2001, the Register Star timely filed a motion for a new trial pursuant to Fed.R.Civ.P. 59, which is the subject of this Order. A request for a new trial based on the sufficiency of the evidence is granted only if the verdict is against the manifest weight of the evidence. Tullis v. Townley Eng'g & Mfg. Co., 243 F.3d 1058, 1062 (7th Cir. 2001). A jury verdict will not be set aside if there exists a reasonable basis in the record to support the verdict. Id. To succeed with a motion for a new trial on damages, a plaintiff must show there is no rational connection

between the award and the evidence. <u>Bruso v. United Airlines,</u> <u>Inc.</u>, 239 F.3d 848, 856 (7th Cir. 2001).

## A.    **The Verdict As To Liability**

The Register Star initially argues the verdict as to liability is contrary to the law and against the manifest weight of the evidence. Specifically, the Register Star argues it exercised reasonable care to prevent and correct sexually harassing behavior, in that it had a sexual harassment policy in place during Miller's employment, Miller failed to meet her duty of telling the Register Star about the harassment, and failed to take advantage of any preventive or corrective opportunities. (Def. Memo., pp. 1-3)  These arguments, however, are based on disputed issues of fact and the jury's finding of liability is not contrary to the law or against the manifest weight of the evidence.  The Register Star acknowledges disputed issues of fact, such as:  "there was conflicting testimony of whether the policy was posted" and "[p]laintiff and Nancy Graham testified that they spoke to Diane Killion in July or August 1997".  (<u>Id</u>. pp. 1, 2)  It is well-settled law in the Seventh Circuit that evaluation of the credibility of the witnesses and assessment of the weight of the evidence is for the jury, and it is a "herculean burden" to overcome a jury's verdict on liability. <u>Cooke v. Stefani Mgmt. Serv., Inc.</u>, Nos. 00-1265, 00-3189, ___ F.3d ___, 2001 WL 504205, at *2, 3 (7th Cir. May 14, 2001).

2

The Register Star also argues Miller did not suffer a tangible employment action. (_Id_. p. 3) Whether Miller suffered a tangible employment action is not relevant in this case. In response to a special interrogatory, the jury specifically found the Register Star did not exercise reasonable care to prevent and promptly correct harassment directed at Miller. The jury would not have reached the <u>Ellerth/Faragher</u> affirmative defense had it found Miller suffered a tangible employment action. For the same reason, the Register Star's argument that Miller was not constructively discharged is a non-issue. The court ruled in the Register Star's favor during the course of the trial and refused to allow Miller to argue a constructive discharge could be considered a tangible employment action.

The Register Star also argues to the extent the jury found David Glover was not a supervisor within the meaning of the <u>Ellerth/Faragher</u> defense, such a finding is unsupported by the record. Glover's status as a supervisor is irrelevant to the jury's finding of liability. Glenn Lamb as the accused harasser was the key to Miller's harassment claim, and the evidence overwhelmingly supports the jury's finding that he held a supervisory position within the meaning of <u>Ellerth/Faragher</u>.

In short, a rational basis existed for the jury's finding of liability and the Register Star's Rule 59 motion for a new trial on the issue of liability is denied.

**B.    The Verdict As To Damages**

   **1.    Compensatory Damages**

   The Register Star argues the award of compensatory damages
is excessive because of the short time span between when Miller
complained of the harassment to Diane Killion and when she quit,
and because the testimony of Glover and Graham was insufficient
to support the verdict.   In reviewing a compensatory damages
award, the court analyzes:   (1) whether the award is monstrously
excessive;  (2) whether there is a rational connection between the
award and the evidence; and, (3) whether the award is roughly
comparable to awards made in similar cases.   Merriweather v.
Family Dollar Stores of Ind., Inc., 103 F.3d 576, 580 (7th Cir.
1996).

   The court finds the award to be supported by the evidence.
See Tullis, 243 F.3d at 1066-69.   A verdict of $100,000 here is
not monstrously excessive in light of the evidence the jury
reasonably believed.   Miller testified Lamb, from 1992 until
1997, repeatedly subjected her to sexual jokes and physically
grabbed her on many occasions.   Such conduct caused her to feel
humiliated, afraid, nervous, and anxious, and she vomited, lost
hair, and suffered sleeplessness.   In 1997, she began therapy and
taking anti-depressant medicine.   Glover also testified that
Miller looked nervous and stressed out as a result of Lamb's
harassment.   Graham testified that, although Miller appeared to

4

be happy when she initially started working at the Register Star, she later would cry or appear upset, and became withdrawn. Although the jury's award of $100,000 could be seen as exceedingly generous, it was within the jury's domain to assess the credibility of witnesses. As in <u>Tullis</u>, 243 F.3d at 1069, the court cannot say the award was monstrously excessive or not rationally connected to the evidence. Likewise, in <u>Tullis</u>, the Seventh Circuit found an award of approximately $80,000 was roughly comparable to similar cases, and the court finds this case to be similar to <u>Tullis</u>. <u>See also</u> <u>Williams v. Trader Publ'g Co.</u>, 218 F.3d 481, 486 (5th Cir. 2000) ($100,000 compensatory damages award not excessive; plaintiff testified she lost sleep, started smoking, and lost severe amount of weight because of discriminatory discharge).

### 2.  **Backpay**

The Register Star argues the award of approximately $24,000 was excessive because Miller failed to mitigate her damages by accepting the Register Star's offer of re-employment. (Def. Memo., p. 7) However, this argument involves disputed issues of fact. The jury could have reasonably determined, based on the evidence, that the Register Star's offer was not truly legitimate. This conclusion rests on the credibility of the witnesses and will not be disturbed.

### 3.   **Punitive Damages**

In its post-trial motion, the Register Star also attacks the
$100,000 punitive damages award.  Title VII authorizes an award
of punitive damages when a plaintiff shows the defendant engaged
in discriminatory conduct with malice or reckless indifference to
the plaintiff's federally protected rights.  42 U.S.C. §
1981a(b)(1); <u>Kolstad v. American Dental Ass'n</u>, ___ U.S. ___, 119
S. Ct. 2118, 2124 (1999); <u>Bruso</u>, 239 F.3d at 857.  To be entitled
to punitive damages under § 1981a, a plaintiff must first show
the employer acted with knowledge that its actions may have
violated federal law.  <u>Kolstad</u>, 119 S. Ct. at 2125; <u>Bruso</u>, 239
F.3d at 857.  A plaintiff may satisfy this element by
demonstrating that the relevant individuals knew of or were
familiar with the antidiscrimination laws and the employer's
policies for implementing those laws.  <u>Bruso</u>, 239 F.3d at 858.

Once a plaintiff has established that the defendant or its
employees acted in reckless disregard of his federally protected
rights, he must establish a basis for imputing liability to the
employer.  <u>Id</u>.  In vicarious liability cases, this inquiry is
controlled by general principles of federal agency law.  <u>Id</u>.  For
example, an agent's misconduct may be imputed to the principal
for purposes of awarding punitive damages if:  "'(a) the
principal authorized the doing and the manner of the act, or (b)
the agent was unfit and the principal was reckless in employing

6

him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act.'" Kolstad, 119 S. Ct. at 2128 (quoting RESTATEMENT (SECOND) OF AGENCY § 217 C (1957)).

Even if a plaintiff establishes a basis under agency principles for imputing liability to an employer, the employer may avoid liability for punitive damages if it can show it engaged in good faith efforts to implement an antidiscrimination policy. Id. at 2129; Bruso, 239 F.3d at 859. Although the implementation of a written or formal antidiscrimination policy is relevant in evaluating an employer's good faith efforts to comply with Title VII, it is not sufficient in and of itself to insulate an employer from punitive damages. Bruso, 239 F.3d at 858.

The jury in this case was instructed as to Kolstad's standards for imposing liability on the Register Star. Specifically, the jury instruction regarding damages stated, inter alia:

> You may only award punitive damages if plaintiff proves by a preponderance of the evidence that defendant engaged in a discriminatory practice with malice or with reckless indifference to plaintiff's federally protected rights. Defendant acts, or fails to act, with malice if it acts or fails to act with ill will or spite.
> An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law

7

by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

An award of punitive damages would be appropriate only if you find for plaintiff and then further find from a preponderance of the evidence (1) that a higher management official of defendant personally acted with malice or reckless indifference to plaintiff's federally protected rights, and (2) that defendant itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

The Register Star initially argues it did not act with malice or reckless indifference to Miller's federally protected rights. (Def. Memo., p. 8) This is true if only Lamb's conduct were considered. While the jury could reasonably conclude that he was a supervisor within the meaning of Title VII on the question of liability, he was not a managerial employee within Kolstad's meaning for imposition of punitive damages.

In Kolstad, 119 S. Ct. at 2128, the Supreme Court acknowledged the definition of a "managerial employee" is vague and requires a fact-intensive inquiry. A court should review the type of authority the employer has given to the employee, the amount of discretion the employee has in what is done, and how it is accomplished. Id. "[A]n employee must be 'important,' but perhaps need not be in the employer's 'top management, officers, or directors,' to be acting 'in a managerial capacity.'" Id. (quoting 1 L. Schlueter & K. Redden, Punitive Damages, § 4.4(B)(2)(a), p. 182 (3d ed. 1995)). The evidence shows Lamb did not occupy such a position. He interviewed applicants and made

8

recommendations regarding who to hire, but did not have the
authority to hire. He evaluated employees but did not have the
authority to fire them. These facts show Lamb had a limited
amount of discretion and was not a "managerial employee" within
Kolstad's meaning. Thus, his knowledge of his own harassing
conduct cannot be imputed to the Register Star. See Cooke, ___
F.3d ___, 2001 WL 504205, at *4.

This does not end the inquiry, however. Killion was not
personally involved in the sexual harassment of Miller.
Nevertheless, Killion's actions are evaluated from the viewpoint
of whether she was aware that Lamb was acting in violation of
Title VII and, assuming she learned of such a violation, what she
did about it.

According to Miller's version of the facts (which the jury
was entitled to believe), Miller and Graham complained to Killion
about Lamb's sexually harassing conduct in July or August of
1997. According to Graham, Killion responded by saying, "Grow
up. Boys will be boys. This is a workplace." Miller testified
Killion said she would check into it. There is no evidence that
Killion investigated their claim. While Killion denied she was
informed of Lamb's harassment at this meeting, this is a jury
question and was resolved against the Register Star. Killion, as
the Human Resources Director at the Register Star, is a
managerial employee within the meaning of Kolstad. See Bruso,

239 F.3d at 860. There was no evidence that Killion was not a managerial employee. She was the person responsible for ensuring compliance with and continued implementation of the company's antidiscrimination policy according to its Employee Handbook. She was also specifically designated to receive sexual harassment complaints. In not doing anything in response to the complaints of Miller and Graham about Lamb's conduct, the jury could have reasonably concluded that, as a managerial employee responsible for the Register Star's antidiscrimination policies and in the scope of her employment, she acted with malice or with reckless indifference to Miller's federally protected rights. See Deters v. Equifax Credit Info. Serv., Inc., 202 F.3d 1262, 1269 (10th Cir. 2000) (recklessness and malice are to be inferred when an employee responsible for setting or enforcing discrimination policies does not respond to complaints, despite knowledge of serious harassment).

By virtue of her position as a managerial employee and a person responsible for enforcing the Register Star's discrimination policies, then by the company's own designation, information provided to such an employee imputes knowledge to the company. See id. at 1270-71. Thus, by virtue of Killion's position, her knowledge, and her inaction, the Register Star was recklessly indifferent to Miller's federally protected rights within the meaning of § 1981a. See id. Its reckless

indifference in failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew or should have known is premised on direct liability, not derivative liability. Id. at 1270; see also Cooke, 2001 WL 504205, at *4 (discussing Deters and explaining the difference between direct and vicarious liability for purposes of imposing punitive damages on an employer); Bruso, 239 F.3d at 860 n.8 (noting other circuits have held that, even after Kolstad, a Title VII plaintiff may obtain punitive damages on a theory of direct liability if the corporate officers involved in the discriminatory employment decision were sufficiently senior to be considered proxies for the company). Because the court finds the Register Star's liability for punitive damages may be based on a theory of direct liability, the "good faith" defense set forth in Kolstad is inapplicable here. See Deters, 202 F.3d at 1271.

Alternatively, even under the vicarious liability principles discussed in Kolstad and on which the jury was instructed, the evidence supports the jury's punitive damages award. The jury was entitled to conclude, based on the evidence presented at trial, that the Register Star did not engage in good faith efforts to implement an antidiscrimination policy. The Register Star points to its written antidiscrimination policy but, as stated above, this is not enough. Both Lamb and Glover testified they were not aware of such a policy, did not see the posting of

any such policy, and received no training between 1992 and 1997 regarding sexual harassment. The lack of knowledge of two of the Register Star's own supervisors shows it did not effectively implement its policy. In accepting the evidence that Killion disregarded the policy by refusing to remedy Lamb's misconduct, the jury could have concluded the Register Star did not make a good faith effort to comply with Title VII, despite its formal written policy. See Bruso, 239 F.3d at 861; see also Cadena v. The Pacesetter Corp., 224 F.3d 1203, 1210 (10th Cir. 2000) (evidence supported finding that employer did not meet Kolstad's good faith exception, despite its written antidiscrimination policies and sexual harassment training; company knew of sexual harassment and did nothing to stop it, showing the company did not enforce its policies). The Register Star argues it acted swiftly after Paul Mollway, Director of Operations, was notified of the charges by investigating the charges, removing Lamb from the workplace, and offering Miller reinstatement. (Def. Memo., p. 8) While these actions are commendable, the jury was entitled to conclude Miller complained prior to quitting, and Killion did nothing in response.

The Register Star also summarily argues the award of punitive damages is excessive. The court finds it has not satisfied the standards for showing the punitive damages award is excessive. See BMW of North Am. v. Gore, 517 U.S. 559 (1996);

Deters, 202 F.3d at 1272. In evaluating whether a punitive damages award is excessive and, therefore, unconstitutional, the court considers three criteria: (1) the degree or reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Cooper Indus., Inc. v. Leatherman Tool Group, Inc., ___ U.S. ___, 121 S. Ct. 1678, 1687 (2001) (citing Gore).

Under the first factor, the jury in this case was entitled to conclude that Lamb subjected Miller to egregious sexual harassment between 1992 and 1997. Although a managerial-level employee did not learn of the harassment until July or August 1997, the jury was also entitled to conclude the Register Star did nothing in response to her complaints until after she quit, when it became fearful of a lawsuit. Under the second factor, the ratio of compensatory to punitive damages is 1:1, so there is no disparity. Cf. Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008 (7th Cir. 1998). As for the third factor, the jury's award of $100,000 is in the same ballpark as the $80,000 punitive damages award upheld in Deters, a comparable Title VII sexual harassment case.

## CONCLUSION

For the foregoing reasons, the motion for new trial is denied in its entirety.

ENTER :

_____

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: _____June 8, 2001_____

14